## Wm. Tabler, of Lewis, *vs.* John A. Castle.

A creditor's bill was filed against a devisee for the sale of the real estate of the testator, to pay debts. The defendant, having been duly summoned, failed to appear, and an interlocutory decree was obtained against him, proof taken, and *final decree* for a sale duly passed. During the *same term* the defendant filed a *petition* asking that this decree might be opened, and his answer let in, alleging that there was some defect in the service of the summons, and the decree passed in consequence of some mistake and surprise, and that the *claim* of the complainant had been *fully paid and settled* by the testator, in his life time. The deputy sheriff made affidavit that he read the summons to the defendant, distinctly informed him of its contents and object, and that defendant replied thereto, "I will attend to it," or "will see about it." But it was proved that the bill was filed upon the *same cause* of action (a single bill) on which the complainant, *six years before the testator's death,* had instituted a suit at law, which suit was entered on the docket *"settled,"* and the cause of action, some months *after the testator's death,* was, at the instance of the complainant, withdrawn and delivered to him by the clerk, under an order of the court, but why or for what purpose, does not appear. Held:

That in view of the affidavit of the deputy sheriff, the decree ought not to be opened upon the allegations of defect in the service of the summons, and of mistake or surprise, but in view of the entry *"settled,"* and the circumstances under which the cause of action was withdrawn, the defendant *is entitled to relief,* such facts tending strongly to show there was misapprehension on his part, which prevented his appearance and answer, and that such failure was not the result of wilful negligence, or intentional disobedience to the command of the summons.

According to the chancery practice of this State, a decree is not considered as *enrolled* until the end of the term in which it has been passed.

Appeal from the Equity Side of the Circuit Court for Frederick county.

This appeal was taken from an order of the court below, (Nelson, J.,) dismissing two petitions filed by the appellant, for the purpose of having the decree which had been passed against him in the case opened, and his answer to the bill let in. The proceedings, and all the facts of the case, are fully stated in the opinion of this court.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

Tabler *vs.* Castle.

*Jos. M. Palmer* for the appellant:

1st. Under all the facts and circumstances of this case, the decree passed on the 20th of August 1855, ought to be opened and annulled. It is, without doubt, a well settled principle, both of courts of law and equity, that judgments or decrees obtained by mistake or surprise, will be opened at any time *during the term* in which they are obtained, upon affidavits, and the party let in to try the case upon the merits, if it shall appear to the court that the party so surprised has been injured, and has a good defence upon the merits. Why should it not be so? It would seem to be consistent with all the well settled principles of equity, that where a defendant has omitted to appear to a bill and file his answer, according to the rules of the court, through a misunderstanding and ignorance of the true facts, which make it his duty to appear and answer, and a decree by default has been obtained against him, that such a decree, under such circumstances, should be opened and set aside, to enable him to appear and try his case upon its merits. It would be difficult to imagine a stronger case than the one under consideration. The defendant shows, by his affidavit, that he does not owe the money claimed; that the debt had been "*settled*" in court in 1846; that the single bill in question was given by mistake, and is not due and owing to the complainant; and that he is able and ready to prove that the claim is unjust, and that he does not owe the money. The application to open the decree was made during the July term of the court, while it was in actual session; and the same term in which the decree was passed. The decree was not enrolled; for, in this State, a decree is not considered as enrolled until the term has passed, and until then the court has the absolute control over it, and can alter and change it in any way, so as to promote the ends of justice. If the court had not this power, it would cease to be a court of equity. In the case of *Oliver vs. Palmer & Hamilton*, 11 *G. & J.*, 149, it is said that the act of 1820, ch. 161, "did not design to give one party advantage over the other, and in all cases to make the decree *conclusive* in the cause, although his failure to appear was not the result of negligence, or where it might have proceeded from a provi-

19    v. 12.

dential cause; whenever the defendant shall be enabled to present such a case, he would have a right to be let in, to develope the merits of his case, and a refusal of the court below to permit him to do so, would, in our opinion, be error." In the case of *Burch vs. Scott*, 1 *Bland*, 120, the chancellor says: "It has been the long established usage and law of the court of chancery, to consider all its orders and decrees as completely within its control, and open to be altered, revised or revoked during the whole term at which they are passed, on motion or by petition." Many other authorities might be cited to sustain the same general principle. In this case it fully appears by the affidavit of the appellant that he has merits, and that the decree was obtained by surprise; and if the court be satisfied of that fact, the decree will be stricken out, and the party let in to try the cause upon the merits. No injury could result from such a course, but it would be promotive of justice, and prevent absolute injury and, perhaps, ruin to the defendant.

2nd. The short copy of the judgment of Castle against the executor of Peter Tabler, deceased, exhibited in this case by Castle, can have no influence upon the court, in the determination of the questions involved in the cause. 1st. The short copy of the judgment is not evidence, being excepted to, and ought to be considered as out of the record. 2nd. It is a well settled principle of law, in this State, that a judgment obtained against an executor, does not bind the real estate of the deceased, and is not even *prima facie* evidence against the heir or devisee in any case. 4 *H. & J.*, 270, *Duvall vs. Green*, 3 *G. & J.*, 259, *Gaither vs. Welch*. 6 *G. & J.*, 4, *Collinson vs. Owens*. The judgment which was entered up against the executor, was considered as a mere matter of form. It was only for assets *quando acciderient*, and the full record of the case would have exhibited the fact that the defendant pleaded *nul assets ultra*.

*Wm. P. Maulsby* for the appellee:

The decree in this case was obtained in strict accordance with the provisions of the act of 1820, ch. 161, and with the

Tabler *vs.* Castle.

rules of the court which passed it. The proof is full and clear. The proceedings, so far from being indecently *hurried*, were marked by leisurely deliberation, and are not subject to any of the animadversions of the court in 11 *G. & J.*, 440. The action of the court on the petition of the appellant to open the decree, was to be regulated by a sound discretion, to be exercised according to law, and is subject to revisal by the appellate court. 1 *G. & J.*, 393, *Burch vs. Scott.* 11 *G. & J.*, 147, *Oliver vs. Palmer & Hamilton.* But the true question is, was good cause addressed to the sound, legal discretion of the court, for vacating this decree, and letting in the appellant to answer and make defence, as if he had appeared before final decree? The cause alleged is, that the decree was obtained by surprise and mistake, and that the appellant had, and could have shown, a good defence on the merits, if he had appeared and answered before decree, and his prayer for leave to take proof, is not to show surprise, mistake or fraud, but to show that he had a good defence on the merits; that is to say, he seeks in this indirect mode to get into the record the same proof, and none other, which he might have offered (if he had it) if he had appeared and answered before decree, for the purpose of "*fortifying and strengthening his affidavit as to the surprise and mistake.*" The only mistake and surprise alleged, are in regard to the service of the *subpœna*, and on this point he is careful not even to allege that it was not served, but only that if it was, he did not understand it. The act of 1820, provides no remedy for a party who does not understand a *subpœna*, especially where it is distinctly read to him, and he is informed of the contents and object of it, and replies, "Very well, I will attend to it," as is shown by the affidavit of the deputy sheriff to have been the case in this instance. In none of the proceedings is there an allegation by the appellant that the *subpœna* was not served, or a prayer for leave to take testimony to prove that it was not served. It is not contended that a case might not be presented in which, under the act of 1820, a defendant might not be let in to appear and answer, even after decree, as where it appeared clearly to the court that his failure to appear and answer before decree, was not

the result of negligence, or proceeded from a providential cause. 11 *G. & J.*, 149. But it is contended that this is not such a case; that in this case, instead of its being shown by the appellant that his failure did not result from negligence, or did result from a providential cause, or any cause addressing itself to the sound discretion of the court, it is shown by the record that, upon the best construction, the failure to appear and answer did result from negligence, upon the most probable construction, that it resulted from the settled purpose of the appellant to thwart and delay the appellee in realizing his just claim, evidenced by the highest form of security, a single bill.

If the appellant had designed to seek to vacate the decree for fraud, as for collusion between the sheriff, appellee, or others, in reference to the service of the *subpœna*, or for other fraud, of whatever character, the remedy would have been by bill of review. 11 *G. & J.*, 148. When the question arises as to the sufficiency of the cause shown for vacating the decree, and letting in the defendant to answer and defend, it is submitted that the unsupported affidavit of the defendant, that the decree was obtained by surprise and mistake, when the nature of the surprise and mistake is not disclosed, and when, if disclosed at all, it appears to consist in an unaccountable ignorance of the commonest duties of a citizen, is not sufficient cause to induce the sound discretion of the court to strike out a decree. If it were, it is submitted that it would amount to a practical nullification of the act of 1820, in favor of defendants of easy conscience.

ECCLESTON, J., delivered the opinion of this court.

The bill in this case was filed in the circuit court for Frederick county, on the 30th of January 1854, by John A. Castle, (the appellee,) against William Tabler, of Lewis, (the appellant.) It is, in form, a creditor's bill; and states that Peter Tabler, late of Frederick county, in his life time, was indebted to the complainant in the sum of eight hundred and forty-three dollars and thirteen cents, and interest thereon, in virtue of a single bill, bearing date the 1st of March 1843, which is filed,

and marked exhibit No. 1. The bill also states that the said Peter Tabler was seized and possessed of considerable real estate, and, on the 16th of March 1850, made and executed his last will and testament, and thereby devised all his estate, real and personal, after the payment of his debts, to William Tabler, of Lewis, of Frederick county, and thereby constituted the said William Tabler, of Lewis, his executor. That on or about the 10th day of April 1852, the said Peter Tabler departed this life, leaving his said last will and testament unaltered and unrevoked, and, on the 27th of April 1852, the same was duly admitted to probate in the Orphans court of Frederick county, and letters testamentary thereon, were granted to the said William Tabler, of Lewis, who possessed himself of the personal estate of the testator, left at the time of his decease, which personal estate was very inconsiderable, and wholly insufficient to pay the debts due by Peter Tabler, at the time of his decease. And the bill prays that the real estate of the said testator, or so much thereof as may be necessary for the payment of the complainant's claim, and the claims of other unsatisfied creditors, may be sold; and for such further and other relief as may be equitable.

A summons was issued, returnable on the 2nd Monday of February 1854, and the defendant was then returned summoned.

The defendant having failed to appear, the court passed an interlocutory decree, on the 28th of August 1854, ordering a commission to issue, to take testimony to support the allegations of the bill. The commission was issued the same day, but not having been executed as late as the 16th of February 1855, the court revoked that commission and ordered another; which, being issued on that day, was subsequently executed, and the commissioner returned the same on the 19th of February 1855. The defendant not having appeared, on the 20th of August 1855, the court passed a decree for the sale of the real estate which belonged to Peter Tabler, in his life-time, in the bill and proceedings mentioned, or so much thereof as might be necessary, for the payment of the debt due to the complainant mentioned in the bill and proceedings, and interest

thereon, and for payment of other creditors of said Peter Tabler, and costs of the proceedings.

During the term in which this decree was passed, William Tabler (of Lewis) filed a petition, stating that the decree was obtained by some mistake and surprise, which was not discovered until a few days previous to the filing of the petition; that the first notice he had in any way of the decree, and of the proceedings upon which it was passed, was by an advertisement of the sale of the real estate in question, by the trustee appointed in the case. The petitioner states positively that there has been some mistake in the supposed service of the summons issued in the case, but how that mistake originated, he is unable to state; but he does state positively that if said summons was ever mentioned to him, he utterly misunderstood that matter, for if he had understood that he had been summoned to appear and answer the bill of complaint of John A. Castle, for any case, he should, without delay, have applied to his counsel to appear to the case and defend the same, as the pretended claim of John A. Castle, which he seeks to enforce, is not justly due and owing to him, but the same has been fully settled and satisfied. That the failure of the petitioner to appear in court, according to the summons, was attributable to the mistake in relation to the service thereof, and not with an intention to delay the complainant in the prosecution of his suit. That the petitioner does not intend to deny that the deputy of the sheriff may have spoken to him, at some place in the county, in relation to said summons, but if he did, the petitioner did not understand its purport, and by reason of said mistake and the obtaining said decree, he has been taken by surprise, and greatly injured by the decree.

The petitioner also states he is advised that he has a good and competent defence to the pretended claim of Castle, if he can be permitted to appear to the case and file his answer, setting forth facts in defence.

It is further stated, in the petition, that Peter Tabler, at the time of his death, did not owe to Castle the sum of money, or any part thereof, specified in the said single bill filed with the bill of complaint, but that the same had been settled and satis-

fied during the life of Peter Tabler, as fully appears by the disposition of an action instituted in Frederick county court, as a court of law, on the same cause of action, in which John A. Castle was plaintiff, and Peter Tabler defendant, which stood for trial on the docket of said court at the February term of the court, and on the 3rd day of March 1846, during said term, that case was entered *settled.* That the note or single bill on which said suit was instituted, being the same note or single bill now in dispute, remained on file in the clerk's office, in the said case or action, until after the death of Peter Tabler, and until the 5th day of August 1852, when the same note or single bill was taken from the files of the said case, under and by virtue of an order of the judge of the court, without stating the cause for which it was wanted. All which, the petition states "fully appears from an extract of said case, the entry settled, the order of the Hon. M. Nelson, of the 5th of August 1852, and a copy of said note or single bill, &c., under the seal of the clerk of the circuit court for Frederick county, here exhibited, marked A, to this petition, which your petitioner prays may be taken and considered as a part of this petition.

The petitioner further states, he is advised that if, under the circumstances, the decree of the 20th of August 1854, is permitted to stand unrescinded, and the enrollment unopened, by the tenor and effect of said decree, the complainant therein has established the right to the receipt and collection of the whole amount of the eight hundred and forty-three dollars and thirteen cents, specified in said note or single bill, and the interest thereon, when, in truth and in fact, not one cent is due, and when the decree was obtained by mistake, and when the said John A. Castle, on the 5th of August 1852, admitted, by his affidavit on the back of said note, that the whole sum specified in the note was not all due, but that certain credits, the amount of which was not known, ought to be allowed.

It is also stated by the petitioner, that he has fully paid all the debts and claims which have been presented to him in due form of law, due and owing by the said Peter Tabler, at the time of his death, and the petitioner verily believes that no

person has any claim against him, as executor of said Peter Tabler, except the pretended claim of John A. Castle, and if there be any just claim not paid, the petitioner says he is ready and willing to pay said claim or claims whenever they shall be presented, properly authenticated.

The petition prays the court to order and direct "that the enrollment and decree in this case, passed on the 20th day of August 1855, be opened, and the said decree vacated, and the said defendant let in to answer said bill upon equitable terms, unless good cause to the contrary be shown; and that the court will order and direct the trustee appointed by the decree, to surcease from all further proceedings in the case as trustee, until the further order of the court in the premises." There is also a prayer for general relief.

The petition was sworn to and filed on the 4th of October 1855, and on the same day the court passed an order requiring John A. Castle, by his solicitor, to appear before the court on the 10th of the same month, and show cause why the enrollment and decree should not be opened and the decree vacated, as prayed; and further requiring the trustee in the case to surcease from all further proceedings as such trustee, until the further order of the court.

A few days after the passage of this order, John A. Castle, by his solicitor, filed his answer. He says it is not true, as stated in the petition, that the decree of the 20th of August 1855, was obtained by mistake or surprise on said petitioner. The respondent also states that the bill of complaint in said cause was filed on the 30th of January 1854, that the summons was issued the same day, and delivered to the sheriff, and on or before the 4th day of the ensuing month, it was served upon the petitioner, William Tabler, of Lewis, by Joseph M. Ebberts, a duly qualified deputy of the sheriff, by distinctly reading the summons to the said petitioner, and thereby informing him of the contents, and object, and command thereof, as will appear from an affidavit of the said deputy sheriff, herewith filed, and marked exhibit A.

The respondent further states, that the interlocutory decree in the said cause was not applied for and obtained until the

Tabler *vs.* Castle.

26th of August 1854, and that a final decree was not applied for and obtained until the 20th of August 1855, so that the petitioner had about eighteen months given him, within which to appear to the bill and file his answer, if he desired to do so, and therefore this respondent cannot be justly charged with an attempt to surprise the petitioner, as a final decree was not obtained with anything like the expedition which the rules of law and of the court would have warranted.

The answer denies that Peter Tabler, in his life time, paid to the respondent, or to any one for his use, "the sum of money mentioned in said single bill filed with said bill of complaint, or any part thereof, or that the same was settled and satisfied in any manner whatsoever, and he states that at the death of Peter Tabler, the same was due to this respondent." He further states, that since the death of Peter Tabler, this respondent instituted an action at law in the circuit court for Frederick county, on said single bill, against the said petitioner, who is the executor of Peter Tabler, and also devisee under his will, and on the 22nd of February 1854, the respondent obtained judgment in said court for the full amount of the principal and interest of said single bill, as will appear from a copy of said judgment herewith filed, marked exhibit B.

In his answer the respondent further states, that the entry in a suit of which exhibit A, filed with said petition, is a copy, was not made or intended as an entry, that said single bill had been settled or satisfied, but was made alone by way of withdrawing said single bill from suit at that time, which this respondent was induced to consent to by the earnest importunity of the said Peter Tabler, who was his uncle, and who promised that said single bill should be paid within a short time thereafter, "all which this respondent was ready to prove at the trial of said cause, in which the said judgment was obtained, on the 22nd day of February 1854."

This answer was sworn to on the 6th of October 1855; and the affidavit of Joseph M. Ebberts, filed with the answer as exhibit A, is dated the same day, in which it appears that the affiant was a deputy sheriff on the 30th of January 1854, and so continued to be until his affidavit was taken, that the sum.

20    ᴠ 12

mons referred to in the petition and answer thereto, was, on or about the 30th of January 1854, regularly delivered to the affiant, and he says, that between that day and the 4th day of February then next ensuing, he served the said summons on the said William Tabler, of Lewis, "by reading the same to the said William Tabler, of Lewis, and by distinctly informing him of the contents and object of said subpœna, and that to the best of his recollection and belief, the said William Tabler, of Lewis, remarked, in reply to the explanation by this affiant of the contents and object of said subpœna, 'Very well, I will attend to it,' or, 'I will see about it,' which form of expression was used this affiant does not clearly recollect."

The exhibit B, filed with the answer of Castle to the petition, is a short copy of the judgment of the 22nd of February 1854, referred to in the answer; and the short copy shows the judgment was obtained against William Tabler, of Lewis, as executor of Peter Tabler, and to bind assetts *quando acciderint.*

To the admissibility of this exhibit as evidence, exceptions have been filed by the petitioner, upon the ground that such a judgment is not evidence in this controversy relating to a decree for the sale of the real estate formerly owned by Peter Tabler, and devised by him to the appellant.

The parties filed the following agreement:

"John A. Castle vs. William Tabler, of Lewis. No. 2539, Equity. In the circuit court for Frederick county, sitting as a court of equity. We, the solicitors for complainant and defendant, agree that the short copy of the within case or action at law, No. 37 trials, Frederick county court, of the February term 1846, shall be taken and considered the same, and to have the same effect as if a full record of said case was made and exhibited under the seal of said circuit court, certified," &c.

This agreement relates to the exhibit referred to in the petition, and therewith filed, marked exhibit A; which exhibit shows the entry of *settled,* on the 3rd of March 1846, in the action at law instituted by John A. Castle vs. Peter Tabler, in Frederick county court, upon the said single bill for $843.13, also the order of the court in the same case, dated the 5th of

August 1852, directing the clerk to deliver the note to the plaintiff, retaining a copy of the same; which exhibit A, also shows a copy of the note or single bill retained by the clerk, which copy is as follows:

"$843.13. Twelve months after date, I promise to pay John A. Castle, or order, eight hundred and forty-three dollars and thirteen cents, for value of him received, with interest from date. Witness my hand and seal, this first day of March, one thousand eight hundred and forty-three.

Witness—*S. R. Waters*.          PETER TABLER, (Seal.)"

A replication was filed by the petitioner, but no commission to take testimony was issued.

On the 13th of October 1855, the petitioner filed a further petition, reciting some of the previous proceedings, and praying that a commission might be issued to take testimony to prove the allegations in his petition, to show that he has a good and complete defence to said bill upon the merits, or to authorize the petitioner to take affidavits before a justice of the peace, to be filed, to strengthen and fortify his affidavit as to the mistake and surprise in obtaining the said decree, and that he might be allowed to prove all such facts and circumstances as would tend to show that the decree of the 20th of August 1855, was obtained by some mistake or surprise.

Without ordering proof to be taken in either of the modes asked for by the petitioner, the court passed an order, on the 3rd of March 1857, dismissing both of the petitions filed by William Tabler, of Lewis. From this order he appealed.

It will be seen that the petition seeking to have the decree opened, was filed during the same term in which it was passed. Although such is the fact, with the affidavit of the deputy sheriff before us, in regard to the service of the summons, we should not deem it proper to open the decree simply upon the allegations set forth in the petition, in reference to some defect in the service of the summons, and that the decree was passed in consequence of some mistake or surprise. But, in our opinion, there is evidence tending strongly to show there was misapprehension on the part of the petitioner, which prevented him from appearing and filing an answer to the bill of com-

plaint; and that his failure to appear and answer was not the result of wilful negligence, or intentional disobedience to the command of the process.

The bill of complaint was filed upon the same single bill on which a suit at law had been instituted in Frederick county court, by John A. Castle, against Peter Tabler, which suit was entered "settled" on the 3rd of March 1846. The defendant in that suit was then living. According to the statement in the bill, he died on or about the 10th of April 1852, which statement is corroborated by a witness examined on the 19th of February 1855, under the commission, who then thought the death was about three years before.

For six years, during Peter Tabler's life, after the action at law had been entered *settled*, the single bill remained on file in that case; and not until some months after his decease was it withdrawn; when, at the instance of Castle, it was delivered to him by the clerk, under an order of the court. Why or for what purpose it was ordered to be delivered, is not disclosed by any thing appearing in that case.

In view of the entry "settled," and the circumstances under which the cause of action was withdrawn, we think the appellant is entitled to relief. And we think so, even conceding (without, however, so deciding) that the judgment stated in the appellee's exhibit B, is admissible as evidence. It was only a judgment to bind future assets; and, inasmuch as the administration account previously passed by the Orphans court, showed that the executor had overpaid the personal estate upwards of $600, the aggregate amount of that estate being only $225, it might readily be supposed there was very little, if any, prospect that the executor would ever have any future personal assets, which he would be required to apply to Castle's judgment. This being so, with a view of avoiding the expense and trouble of a contested trial at law, the executor might have consented to give a judgment to bind assets *quando acciderint*, without designing to acknowledge, or supposing he was thereby confessing, and, in fact, without believing, that the claim had not been fully settled, according to the entry, in the former suit.

Tabler *vs.* Castle.

Entertaining these views, it becomes unnecessary to decide whether the appellant's exceptions to the admissibility of the evidence should or should not be sustained.

Each party shall pay his own costs in this court, in any event. And before the decree shall be opened, the appellant shall pay to the appellee, or to his solicitor, or deposit in the court below, to be paid to the appellee, all his costs which accrued in the said court before the filing of the appellant's first petition; the said costs to be taxed by the clerk of that court. And if such costs in the court below shall not be paid as above directed, before or within the first four days of the first October term after this cause shall be transmitted or sent down by the clerk of this court to the court below, the said decree shall stand unaffected by any proceedings under the present appeal.

In the event of such payment of costs as will authorize the decree to be opened, then all the costs, from and after the filing of the appellant's first petition, which have accrued or may accrue in the court below, are to await the final result, or such future order or decree as may be passed in relation thereto.

Although the first petition of the appellant was filed during the same term at which the decree was passed, still the petition asks to have the enrollment opened, and other proceedings speak of, or refer to, the enrollment of the decree. It may, therefore, be proper to remark, that according to the chancery practice in this State, a decree is not considered as enrolled until the end of the term in which it has been passed.

*Order reversed and cause remanded*
*for further proceedings.*

( Decided June 17th, 1858.)


LE GRAND, C. J., dissented.

I may say in this, as was said by Mr. Justice Thompson, in the case of *Wheaton vs. Peters,* "It is a matter of regret with me, at any time, to dissent from an opinion pronounced by a majority of this court. And when my mind is left balancing, after a full examination of the case, my habitual respect for the opinions of my brethren may justify a surrender of my

own. But where no such apology is left to rest upon, it be-comes a duty to adhere to my own opinion." I can discover no equity whatever in the application of the appellant. The evidence of the deputy sheriff is positive, that he made known to him the nature of the summons, and, if any thing be infer-able from his reply to the officer, it must be, that he under-stood what was expected of him. He not only did not com-ply with the requisition of the summons, but allowed eighteen months to elapse before final decree, without the slightest ac-tion on his part. If this be not disobedience to the court, I know not what constitutes it. I think the decree should stand, and am therefore of opinion the action of the circuit court ought to be affirmed.